ALF. W. MORRIS, JR., ET AL. V. A. W. MORRIS ET AL.

Decided October 22, 1907.

**1.—Community Estate—Indebtedness—Heirs—Fact Case.**

In a suit by the heirs of a deceased wife against the surviving father for the interest of their mother in the community estate, evidence considered, and held to support the judgment of the trial court that the community indebtedness at the date of the wife's death exceeded the value of her interest in the community estate; that in the settlement of the community estate the surviving father acted in good faith and that the heirs had no interest in the property sued for.

**2.—Community Debt—Extension—Power of Survivor.**

After the death of his wife a surviving husband has the power, in good faith, to secure the extension of a community debt evidenced by notes, before the notes are barred by limitation, even though the debt is increased by compounding the interest, and such action will not release the interest of the heirs of the wife in the community estate from liability for such debt.

**3.—Finding of Fact—Assignment of Error—Insufficiency.**

An assignment of error that a finding of fact by the trial court is against "practically the undisputed evidence" is too uncertain and indefinite to require consideration by the Appellate Court.

**4.—Community Debts—Payment by Survivor.**

. It is immaterial how the application of community property to the payment of community debts is made by the survivor, provided it is made in good faith and at its fair value.

**5.—Tenant in Common—Rents—Liability for.**

The liability of the survivor of the community to the heirs of the deceased spouse for rents of the community property is that of a tenant in common. If the survivor receives rent for the common property he must account to his cotenant for the rents so received.

**6.—Disclaimer—Costs.**

Where a defendant files a disclaimer, not as to the rights of the plaintiff, but only in favor of his codefendant, he is not entitled to recover his costs as against the plaintiff.

Appeal from the District Court of Montgomery County. Tried below before Hon. L. B. Hightower.

*Dean, Humphrey & Powell,* for appellants.—The surviving spouse is a trustee for the heirs of the deceased spouse, and, occupying the position of trustee, is subject to all the duties and conditions attached to the trust relationship. Worst v. Sgitcovich, 46 S. W. Rep., 72; Oaks v. West, 64 S. W. Rep., 1033.

A trustee must not mingle the trust funds with his own. If he does, the beneficiary may follow the trust property and claim every part of the property which the trustee can not identify as his own. Continental National Bank v. Weems, 69 Texas, 489; Taylor v. Taylor, 26 S. W. Rep., 891; Perry on Trusts, sec. 447; 27 Am. & E. Enc. Law, pp. 260-262; notes, idem, 160, et seq.; 2 Perry on Trusts, sec. 863.

In this case, on account of the intermixture (confusion) of the community and individual indebtedness of A. W. Morris to P. J.

Willis & Bro., so that in the final judgment of the District Court of Galveston County, it is impossible to distinguish and separate the community from the individual indebtedness, which intermixture was effected without the co-operation of the heirs of Mrs. Mollie P. Morris, the rule with regard to the legal effect of the confusion of chattels applies to the facts, and in consequence the entire judgment will be treated as upon the individual indebtedness of A. W. Morris, and a sale thereunder of community property applied only to the interest of A. W. Morris in said property. Brown v. Bacon, 63 Texas, 595-600; Evans v. Reeves, 26 S. W. Rep., 221; Johnson v. Hocker, 39 S. W. Rep., 407; Holloway Seed Co. v. City Natl. Bank, 47 S. W. Rep., 77; 3 Am. & E. Enc. Law, 690; Idem, vol. 1, p. 150, title, "Accession;" Idem, vol. 2, p. 160, et seq.; Diversy v. Johnson, 93 Ill., 547.

The rights of the heirs of Mrs. Mollie P. Morris having intervened prior to the sale of the community property by the defendant A. W. Morris, and payment of the proceeds thereof to P. J. Willis & Bro., and prior to the institution of the Galveston suit and the judgment therein and sale thereunder of the property in controversy, the right of P. J. Willis & Bro. to appropriate the payments as its interests might dictate, was lost, as against the appellants, the heirs of said Mollie P. Morris. Willis v. McIntyre, 70 Texas, 41; Gonzales v. Adoue, 94 Texas, 124; 18 A. & E. Enc. Law, 239, and note 2 of the authorities there cited. Idem, page 243.

*Nugent & Foster,* for appellees.

PLEASANTS, CHIEF JUSTICE.—This suit was brought by appellants against appellees to recover a one-half interest in the community estate of the appellee A. W. Morris and his deceased wife, Mollie P. Morris. The plaintiffs are Alf W. Morris, Jr., M. W. Morris, Mrs. Bessie Parsons, joined by her husband, E. B. Parsons, Milton B. Morris, Guy H. Morris, Mable H. Morris and Hortense Morris. The three last named plaintiffs are minors and sue herein by Alf W. Morris, Jr., their next friend. The defendants are A. W. Morris and Tharp & Griffith, a firm composed of D. C. Tharp and Banks Griffith.

Plaintiffs claim by inheritance under Mrs. Mollie P. Morris, the deceased wife of defendant, A. W. Morris, an undivided one-half of nine tracts of land in Montgomery County, which are fully described in their petition, and also one-half of $21,000, which is alleged to be the excess of the proceeds of the sale by defendant A. W. Morris, of community property over and above all community debts of the estate of said defendant and Mollie P. Morris. Plaintiffs further claim the sum of $500 per year from 1891 up to the filing of this suit as the reasonable rental value of their one-half interest in the community real estate. The petition sets out in detail various transactions of the defendant A. W. Morris in the management and disposition of said community estate after the death of Mrs. Morris, and alleges that out of the proceeds of said community estate said defendant purchased tracts of land

Nos. 5, 6, 8 and 9 described in the petition and that after paying for said lands and paying all of the community indebtedness, there remained in said defendant's hands of the proceeds of said community estate at least the sum of $20,000.

It is further alleged that on the 17th day of June, 1905, the defendant A. W. Morris conveyed all of the lands described in the petition to the defendants Tharp & Griffith, that said sale was without consideration and was made for the purpose of defrauding plaintiffs of their interest in said land and has placed a cloud upon plaintiffs' title and they have b< damaged thereby in the sum of $5,000. General damages are also claimed against the defendant A. W. Morris in the sum of $10,000, because of his failure to account to plaintiffs for their interest in said community. The prayer of the petition is for a recovery of a one-half interest in the lands described, for the removal of the cloud caused by the conveyance to Tharp and Griffith and for partition, and further for the recovery of $10,500, one-half of the excess of proceeds of said community estate held by A. W. Morris after payment of all community debts, $7,500 rents of said community lands, and $10,000 damages.

The defendants Tharp & Griffith answered by limited disclaimer, in which they alleged that, on the 17th day of June, A. D. 1905, the defendant A. W. Morris made, executed and delivered to them his deed in writing, whereby he conveyed to them all of the land described in plaintiff's petition, and that, on the — day of ——, A. D. 1905, said defendants, by their said deed in writing, reconveyed all of said land to the defendant A. W. Morris, and especially disclaimed any right, title or interest whatever therein and thereto by reason of their aforesaid deed to the said A. W. Morris, "It being hereby specially intended that this disclaimer shall operate solely for the use and benefit of the defendant A. W. Morris."

The defendant A. W. Morris answered by exceptions, general and special, by general denial and plea of not guilty, and as against the demand of plaintiffs for one-half of the $21,000, or any part thereof, pleaded the statute of limitations of two and four years, and as against plaintiffs' action for rents pleaded the statutes of limitation of three, five and ten years, and against plaintiffs' action for money, rents and damages, pleaded stale demand. The said defendant further answered that at the time of the death of Mrs. Mollie P. Morris, the mother of plaintiffs, the estate of the said defendant and the said Mollie P. Morris was wholly insolvent; that said estate was indebted to various and sundry parties in various sums of money, aggregating the total sum of about $100,000; that after the death of the said Mollie P. Morris, said property and business of said estate was with the knowledge and special permission of said plaintiffs continued and operated for the purpose of preserving and protecting the estate and continuing the business, and to pay off all indebtedness; that said property consisted largely of a saw-mill plant and its appurtenances, and a stock of general merchandise conducted in connection therewith; that a short time prior to the death of the said Mollie P. Morris, to wit, in September, 1890, the stock of lumber on hand, together with

the dry kiln, dollyways, runways, sheds and other necessary appurtenances to said mill and said business were destroyed by fire, and prior to her death the rebuilding and restoration of said lumber yard, dry kiln, etc., had begun, and the work of their restoration had been contracted for, and that said work was then in progress; that the rebuilding of said property was necessary for the preservation of the estate; that if said property ceased to be a going concern, it would greatly deteriorate in value, and have no producing value; that, with the full knowledge, agreement, consent and acquiescence of each of the plaintiffs, the operation of said business was continued; that there was existing a community indebtedness of said A. W. Morris and Mrs. Mollie P. Morris, amounting to the sum of about $100,000, for a part of which notes had been executed by the said A. W. Morris to sundry people, including P. J. Willis & Bro., and on the —— day of April, 1892, said P. J. Willis & Bro. brought suit in the District Court of Galveston County, Texas, where the notes due said Willis & Bro. were payable, upon said indebtedness due them, and upon said notes, the same being community debts, and obtained judgment amounting to the sum of $26,652.50, with ten per cent. interest against the said A. W. Morris, and foreclosing mortgages and deeds of trust on the land described in plaintiffs' petition, excepting the homestead of 200 acres, and excepting tracts 5, 6, 8 and 9, and excepting also the 300 acres known as the Dan Thomas tract; that order of sale was issued under said decree and levied upon the property referred to, and that said property was sold to pay off and satisfy said community debts: that said property was purchased at said sale by P. J. Willis & Bro.: and thereafter purchased by defendant with his separate means; that said business of said estate was continued and operated as aforesaid only up to the 19th day of December, A. D. 1891, which time the defendant alleged was necessary and proper for the preservation, protection and winding up of said estate, and was not beyond a reasonable time for that purpose. It is further averred that all of said community property was sold and the proceeds thereof applied to the payment of the debts of said community estate.

This defendant also claimed advancements made to G. H. Morris, the father of the plaintiffs Guy H. and Mable H. Morris, amounting to $982, on October 21, 1891, and advancements made to plaintiff M. W. Morris on the 6th day of January, 1892, amounting to $1,222.05.

Said defendant also pleaded the payment of certain community debts out of his separate means subsequent to the death of Mrs. Mollie P. Morris, and that he had made valuable improvements upon the homestead tract, consisting of a gin stand, buildings, machinery and all appurtenances, of the value of $2,500, sheds, outbuildings and buildings of the value of $500, and repairs on buildings, fences, etc., and the care and preservation of said homestead property of the value of $1000.

The plaintiffs, by their first supplemental petition, set up the trust relations existing between them and the defendant, as alleged

in their third amended original petition, and the want of notice of any repudiation by the defendant A. W. Morris of their right or claim to the land and other property, and also pleaded minority and coverture, as in said third amended original petition.

Plaintiffs, in their second supplemental petition, denied all and singular the allegations contained in the answer of the defendant A. W. Morris, and for special reply to that part of said answer in which it was alleged that suit was instituted by P. J. Willis & Bro. in the District Court of Galveston County in April, 1892, against A. W. Morris, and that judgment was rendered in said suit with foreclosure on the land in plaintiffs' petition described, the plaintiffs denied that said indebtedness declared on by the plaintiff in said suit, or any part of it, was community indebtedness of the defendant and said Mollie P. Morris but, on the contrary, the plaintiffs aver that said indebtedness and the whole of it was the individual indebtedness of the defendant A. W. Morris, and was contracted after the death of the said Mollie P. Morris, and that the community estate of said Mollie P. Morris was not liable for the payment of said indebtedness, or any part of it. That said suit was instituted against said A. W. Morris individually, and the entire amount due to said P. J. Willis & Bro. at the time of the institution of said suit and the rendition of said judgment was separate and individual indebtedness of defendant A. W. Morris, and the foreclosure of the alleged liens on the property in controversy in said suit and the sale of any of said property to satisfy the judgment rendered in said suit would and did pass, if anything, only the interest and estate of the defendant A. W. Morris in the property sold thereunder, and that such sale or sales, if any were made or undertaken to be made, could and did in no wise affect the right or interest of the plaintiffs, or any of them, as heirs at law of Mollie P. Morris, or otherwise, in said property.

The plaintiffs for further replication aver that said judgment and the sale thereunder are void and of no force and effect as relates to the rights of plaintiffs to the land and other property in controversy for that said suit was instituted by the plaintiff therein and entered into by said plaintiff and said defendant A. W. Morris with the purpose, intent and design to defraud these plaintiffs out of their right and title in and to the community realty of said defendant and his deceased wife, Mollie P. Morris, and that said judgment was obtained by consent and collusion between the plaintiff and defendant in said suit, and the sale of the premises in controversy under said judgment was made not for the purpose of satisfying any community debt due to said plaintiff, P. J. Willis & Bro., by the said A. W. Morris, but solely for the purpose of defrauding these plaintiffs of their legal rights therein and placing the same beyond reach of plaintiffs, and that said suit was instituted and said judgment obtained for the further purpose of defrauding the other creditors of the said A. W. Morris, by reason whereof the sale made thereunder did not pass the title of plaintiffs to said premises.

Plaintiffs especially denied that they were liable for any of the improvements made by said A. W. Morris, which improvements

plaintiffs aver, if erected, were erected for the convenience of the defendant A. W. Morris, and said improvements became and are fixtures upon the land upon which the same are situated, and upon the abandonment by the defendant of the homestead of himself and Mollie P. Morris, said improvements became liable to partition.

Plaintiffs especially denied the existence of any agreement for the restoration and operation of the sawmill plant.

A jury was waived and the cause went to trial before the District Court of Montgomery County at the July term, 1906, of said court, and on the 31st day of July, 1906, the court rendered judgment for plaintiffs for an undivided 13-28 of the 200 acre homestead tract, which is described by metes and bounds in the judgment, and for an undivided 13-28 in 300 acres known as the Dan Thomas tract, which is also described by metes and bounds in the judgment, and against plaintiffs for their claim for debt, rents and personal property, and in favor of the defendant A. W. Morris for 15-28 of the homestead and Dan Thomas tracts, and for all of the balance of the land in plaintiff's petition described. The court also rendered judgment that the plaintiffs take nothing as against the defendants D. C. Tharp and Banks Griffith, and that they go hence without day and recover all costs by them incurred.

The trial judge, at the request of appellants, filed the following conclusions of fact:

"A. W. Morris and Mollie P. Morris were married on the —— day of January, A. D. 1867. Mrs. Mollie P. Morris died intestate November 19, 1890, and left surviving her the following children: G. H. Morris, who was born on the 3d day of December, 1867, Martin W. Morris, who was born on the —— day of June, 1869; Bessie Morris Parsons, who was born on the —— day of September, 1871, and who was, on January 4, 1891, married to E. B. Parsons; Alf W. Morris, Jr., who was born on the 15th day of July, 1874; Milton B. Morris, who was born on the —— day of September, 1883; Hortense Morris, who was born on the —— day of June, 1887; Carter Folk Morris, who was born on the 20th day of September, 1890, and who died on the —— day of March, 1891. G. H. Morris died on December 4, 1894, leaving surviving him his wife, Mrs. Hortense Morris, who is still living, and married to W. H. Caton, and two children, Guy H. Morris, Jr., and Mable H. Morris. The above are the sole descendants and heirs of said Mrs. Mollie P. Morris.

"In 1883 A. W. Morris began the erection of the saw-mill plant at Bowers, Polk County, Texas, which was located on the I. Conway survey of land, and continued in the saw-mill business at that place until the death of his wife on November 19, 1890, conducting there a general lumber manufacturing plant with its saw-mill, planing mill, lumber yard, and outfit for logging the saw-mill, and in connection therewith ran a mercantile business, sometimes called a commissary. Prior to the death of Mrs. Mollie P. Morris, and during their marriage, A. W. Morris and his said wife had acquired the tracts of land described in plaintiffs' petition as follows: Tracts Nos. one (1), two (2), three (3), four (4), seven (7), and of

tract No. ten (10), 100 acres out of the John Conkrite survey, and 300 acres out of the John Conkrite survey, known as the Dan Thomas place. All of the lands above described being situated in Montgomery County, Texas, and the lands thus acquired were the community property of the said A. W. Morris and his wife, Mollie P. Morris. The saw-mill at Bowers was destroyed by fire in the spring of the year of 1887, and was thereafter rebuilt by the said A. W. Morris. The entire lumber yard, extending from the saw-mill to the planing mill, including dollyways, runways, loading docks and dry kiln, were destroyed by fire on September 18, 1890. Prior to the death of Mrs. Morris, after this last fire, A. W. Morris began the rebuilding of the lumber yard with the dollyways, loading docks and dry kiln, and had also begun the building of a large dam, for the purpose of constructing a logging pond, and also an elevated tank of large capacity for fire protection. He had also begun the erection of a bridge across the logging pond for his logging railroad. These improvements were in an unfinished condition at the time of the death of his wife, and it was necessary for the preservation of the estate property that the said dry kiln, lumber yard, dollyways and loading dock and elevated tank should be completed, and necessary that the logging pond and railroad bridge should also be completed.

"A. W. Morris, the surviving husband, did not qualify as survivor in community, nor as administrator of his wife's estate. I find that at the time of the death of Mrs. Morris, the estate was indebted to P. J. Willis & Bro. in approximately the sum of $40,000, all of which was secured by deeds of trust and chattel mortgage upon the community property, except the Dan Thomas 300 acre tract out of the John Conkrite survey, and except the 200 acre homestead tract, both of which are located in Montgomery County, Texas.

"I further find that the said estate was indebted to other creditors at approximately $17,500 at the time of the death of Mrs. Morris, and that said indebtedness to other creditors was paid by P. J. Willis & Bro. after the death of Mrs. Morris, with its accretions of interest, and is represented in the amount of the indebtedness that was owing to P. J. Willis & Bro. by A. W. Morris on the 23d day of January, 1892. I find that all of these assets of the community estate, as they existed on the 19th day of November, 1890, at the time of the death of Mrs. Morris, were not of the value sufficient to pay off the indebtedness owing by the community estate at the date of Mrs. Morris' death, and that the estate of A. W. Morris and his wife, Mollie P. Morris, was, at the time of her death, wholly insolvent.

"I find that after the death of Mrs. A. W. Morris, A. W. Morris continued to operate the business until the 19th day of December, 1891, and added to the value of the properties, and also increased the indebtedness. That all the money for these purposes was advanced by P. J. Willis & Bro. The increased value of the available properties being greater in amount than the increased indebtedness to the extent of five thousand dollars, and that on January 23, 1892,

he was indebted to P. J. Willis & Bro. in the sum or $84,572.50, and to parties other than P. J. Willis & Bro., the sum of $4,302.95, making a total indebtedness on that date of $88,876.45, and on that day A. W. Morris surrendered to P. J. Willis & Bro. all his community property, and all of his separate property which he had created subsequent to his wife's death, of any and every character, except his homestead in Montgomery County, Texas, consisting of 200 acres, and except 300 acres, known as the Dan Thomas place. The said P. J. Willis & Bro. credited the said A. W. Morris with $58,000 for the personal property surrendered, and thereafter brought suit and obtained judgment in Galveston County for the sum of $26,572.50 for the indebtedness remaining after the $58,000 had been credited. I find that the judgment for $26,572.50 was for community indebtedness existing at the time of Mrs. Mollie P. Morris' death, and that same was secured by deeds of trust upon the land described in plaintiffs' petition as tracts Nos. 1, 2, 3, 4, 7 and 100 acres of tract No. 10, excepting from said tracts the 200 acre homestead tract. I find that the said P. J. Willis & Bro. under said decree foreclosed the deeds of trust upon said land above referred to, had said land levied upon, advertised and upon the 6th day of September, 1892, same was sold and at which sale P. J. Willis & Bro. became the purchasers, at the price of $700, and credited their judgment with the sum of $700. I find that said judgment and sale was regular in every respect. I find that on January 30, 1893, A. W. Morris purchased said land from P. J. Willis & Bro. paying therefor the sum of $2,000 out of his separate funds. I find that the sale from A. W. Morris to P. J. Willis & Bro. of the personal property was fairly made, and that there was no fraud in said transaction. I find there was no fraud or collusion in obtaining the judgment in the District Court of Galveston County. I further find that the sale of the Montgomery County lands under the judgment was fairly made, and that there was no fraud in the purchase of same after its sale by A. W. Morris. I find that the plaintiffs, Martin Morris, Alf W. Morris, Jr., Mrs. Bessie Parsons, and her husband, E. B. Parsons, and G. H. Morris, prior to his death, had actual knowledge that A. W. Morris had operated the business after his wife's death, and that, on January 23, 1892, he had turned over the property situated in Polk and Tyler Counties to P. J. Willis & Bro., and that all the plaintiffs had constructive knowledge of the judgment in the District Court of Galveston County, and the levy and sale of the property in Montgomery County, under said decree, and the purchase of same by P. J. Willis & Bro. I further find that all of the rents and revenues derived from the homestead in Montgomery County, and the Dan Thomas 300 acre tract were used, together with separate funds of A. W. Morris, in improving and repairing the homestead, upon which, after the death of Mrs. Mollie P. Morris, was erected a gin, gin-house and other improvements of the value of about $7,000. I find upon the death of Carter Folk Morris, the plaintiffs inherited an undivided one-half of his interest in his mother's estate, and that the father, A. W. Morris, inherited the other half of Carter Folk Morris' interest in his mother's es-

-tate. I find that the tracts 6, 8, 9 and 707 acres of No. 10, as described in the plaintiffs' petition were purchased after the death of Mrs. Mollie P. Morris with the separate estate of A. W. Morris. I find that tract No. 5, described in. plaintiffs' petition, was acquired by A. W. Morris after his wife's death by the exchange of 127 acres of land, which was purchased by A. W. Morris from P. J. Willis & Bro. with his separate means, after his wife's death."

The first assignment of error complains of the ruling of the trial court in permitting defendant A. W. Morris to introduce in evidence over the objection of plaintiffs certified copies of the notes upon which the suit in the District' Court of Galveston County in which judgment was rendered in favor of P. J. Willis & Bro., foreclosing a lien upon a portion of the lands involved in this suit, was brought. The objection to said evidence urged by plaintiffs was that the endorsements made upon the notes by said defendant after the death of Mrs. Morris materially changed their tenor and effect and that the effect of such change was to release the interest of plaintiffs in the community estate from all liability therein. It appears from the statement under this assignment that four of the notes sued on in the Galveston court were executed on November 25, 1887, and bore interest from date at the rate of ten percent per annum. On March 5, 1891, the defendant secured an extension of these notes and as consideration therefor agreed to pay interest on the full amount then due thereon at the rate of ten percent per annum payable annually, and this agreement was endorsed on the notes. There is no merit in the assignment. None of the notes were barred at the time of the extension, and there is no claim that the agreement for the extension was not made in good faith by the defendant and for the purpose of protecting and preserving the community estate. That it is within the power of the survivor of a community estate acting in good faith to make an agreement of this kind, can not be doubted.

The second assignment assails the finding of fact by the trial judge that the community estate of A. W. Morris and Mollie P. Morris was insolvent at the date of the death of the latter, on the grounds that "the great weight and preponderance of the credible evidence shows, and practically the undisputed evidence shows, that on the 19th day of November, 1890, the date of the death of Mrs. Mollie P. Morris, the entire community indebtedness of A. W. Morris and Mrs. Mollie P. Morris did not exceed the sum of $57,000, and on said last named date the community estate of said A. W. Morris and Mrs. Mollie P. Morris, consisting of real estate, saw-mill plant, planing mill, tram roads, lumber, merchandise, bills receivable and other personal property was of the aggregate fair -market value of not less than $125,000."

Appellee objects to our consideration of this assignment on the ground that it fails to point out any error committed by the trial court in the matter of which complaint is made. We think it clear that the allegation that the finding is against the "great weight of the credible evidence" is insufficient to require this court to consider whether the finding is so against the great weight and pre-

ponderance of the evidence as to be manifestly wrong or to lead to the conclusion that it was the result of some improper influence, and unless this is the case the finding must be sustained if there is any evidence to support it. It is the exclusive province of the trial judge or the jury, as the case may be, to pass upon the question of the credibility of testimony or evidence, and that is never a question for the appellate court. The allegation that the finding is against "practically the undisputed evidence" is uncertain and indefinite and we are inclined to hold it not sufficient to require us to consider the assignment, but in view of the fact that under other assignments, questioning the sufficiency of the evidence to sustain the judgment we are required to consider all the evidence in the case we will pass upon the question sought to be raised by this assignment.

There is evidence in the record which, if considered alone, would sustain the conclusion that the value of the community estate at the time of Mrs. Morris' death largely exceeded the community indebtedness. This evidence consists of inventories of the property appearing upon the books of defendant A. W. Morris. The first of these inventories purports to show the value of the property on June 24, 1890, the second on November 20, 1890, and the third on March 1, 1891. There is no evidence in the record that each of the several amounts at which the various items contained in these inventories were valued represented the true value of such items, but on the contrary, it appears that many of the items enumerated in said inventories as assets were valued at what it cost to create the particular piece of property so enumerated, and while these book values may have accurately represented the cost of the several items of property, it by no means follows that they should be taken to represent the true values. The undisputed evidence shows that at the time of Mrs. Morris' death the community indebtedness was not less than $57,500. A few weeks prior to her death a large part of the mill property was destroyed by fire and it had been agreed between Willis and defendant, before the death of Mrs. Morris, that the destroyed property should be rebuilt and some improvements added which were necessary to keep the mill a going concern and enable Morris to liquidate his indebtedness. The costs of these renewals and improvements which were in course of construction at the time of Mrs. Morris' death, and which amounted to about $19,000, is not included in the $57,500 indebtedness before mentioned. The defendant A. W. Morris testified that at the time of Mrs. Morris' death in the condition in which the property then was its value was not sufficient to pay more than fifty or sixty percent of the indebtedness. Hooker Morris, the father of plaintiffs Guy and Mable, had been bookkeeper for the business and knew the condition of the property and he and the defendant discussed the latter's financial condition, and he and the plaintiffs Martin Morris and Mrs. Parsons all understood that the estate was bankrupt if a settlement was forced at that time. The witnesses, Lawson, Jones, Carson and Carter, all testified that they knew the property owned by A. W. Morris at the time of Mrs. Morris' death and the condition of his business and that all of the property and assets of every kind owned

by Morris at that time could not have been sold for enough to pay the community indebtedness. After the reconstruction of the property in the fall of 1890 Morris continued to operate the saw-mill until December, 1891, at which time Willis demanded a settlement and proposed that he turn over all of his property in settlement of his indebtedness. When he was told by Willis that the account must be settled he informed his children of his condition and after consulting with friends decided that it was impossible to save the property and agreed to turn it all over to Willis in satisfaction of all his indebtedness to him including the amount due at the time of Mrs. Morris' death and that contracted subsequently. In pursuance of this agreement all of Morris' property, except the homestead and the Dan Thomas tract of land in Montgomery County containing 300 acres, was turned over to Mr. Folk for Willis. While these negotiations were pending, or just after they were consummated, Hooker Morris and the plaintiff Dr. Parsons, employed attorneys to investigate the matter for them and these attorneys, after having a full explanation from A. W. Morris and Lawson and Folk as to defendant's management of the estate and its then status, concluded there was nothing left for the heirs of Mrs. Morris and so reported to their clients. Dr. Parsons and Mr. Feagin, one of the attorneys who represented him in this investigation, both corroborate the statements of the defendant as to these facts.

Willis furnished Morris with all of the money used in the operation of the saw-mill during the time it was operated after Mrs. Morris' death, and Morris turned over to Willis during that time all of the proceeds derived from the business. The accounts between them during that time were large, the books showing that Willis had furnished money and supplies for the business in the sum of $122,000 and that Morris had paid Willis out of the proceeds of the business approximately $80,000.

At the time the business was closed down Morris owed Willis about $90,000. A large portion of this indebtedness was evidenced by notes which were secured by trust deed upon all of the real estate owned by Morris, except his homestead and the Dan Thomas 300 acre tract. When the property was turned over to Willis, he credited Morris with $58,000 as the value of the personal property and thereafter brought suit in the District Court of Galveston County on the notes which were secured by mortgage lien on all of the real estate including the lands that had been purchased by Morris subsequent to his wife's death. The balance claimed to be due on these notes and for which judgment was rendered and the lien on all of the lands foreclosed was $26,572.50. Under this judgment the lands were sold and bought in by Willis, the Polk and Tyler County lands, from which the saw-mill was supplied with logs, were bid in for $10,000 and the Montgomery County lands for $700 and these amounts were credited on the judgment. No further amounts were shown to have been paid on the judgment and no further claim has ever been asserted against Morris by Willis. Morris accepted service in the Galveston suit, admitted that the claim of the plaintiff therein was just, and consented to the judgment against him.

At the time the agreement was made with Willis to turn over all the property to him in satisfaction of all the indebtedness, Morris owed between $4,000 and $5,000 to parties other than Willis, which the latter refused to assume, and it was concluded that the best way to protect Willis against the claims of these creditors was to have the deeds of trust foreclosed by suit and the land sold under such proceedings. The record sustains the trial judge's conclusion that the whole transaction was free from fraud as to these plaintiffs, and it may be added that no fraud was intended as to his other creditors and that he subsequently paid the amounts due them. About a year after the property was turned over to Willis he sold all of the mill property and the Polk and Tyler County lands to W. T. Carter for $50,000. During the time Willis had the property he advertised it for sale in several papers and made every effort to secure a purchaser and finally sold to Carter for the best price obtainable. At the time of this sale the portion of the property sold which belonged to the community estate was worth at least as much as it was at the time of Mrs. Morris' death, plus the costs of the improvements and additions made thereto by Morris. When Carter bought this property it was understood between him and Morris that the latter was to have a half interest therein. The business was thereafter conducted by them in the name of Carter for several years and then the mill was dismantled and the machinery and improvements sold separately. In the settlement of their partnership affairs Morris acquired title to the Polk and Tyler County lands involved in this suit. The profits of this business for the time it was conducted by Morris and Carter, which lasted a little more than two years, amounted to about $36,000 according to their estimate of the value of the property at the time the operations were suspended.

During the time that Willis held the property Morris operated the saw-mill for him on a salary, and after the sale to Carter, Willis in settlement of the amount due Morris, which was about $2,000, sold him the Montgomery County lands. The deed to these lands was made to Carter at Morris' request, and the consideration recited was $700. Morris says that he had the deed made to Carter to prevent his other creditors from getting the land; that he only wanted time to liquidate his indebtedness and that he did pay all his indebtedness. Thereafter in 1895 Carter conveyed the lands to Morris. Mr. Jones, who was Willis' land man, testified that the consideration was recited in the deed to Carter as $700 in order that the account on the books of Willis would balance, that sum being the amount for which the land was bid in by Willis and carried on his books.

From this statement of the facts, which are fairly deducible from the evidence contained in the record, it is manifest that the second assignment of error above set out can not be sustained. We think the preponderance of the evidence sustains the conclusion that the community estate of Mrs. Mollie P. Morris and the defendant A. W. Morris was insolvent at the time of Mrs. Morris' death.

The third assignment of error assails the finding of the trial

court, that the increase in value of the community property caused by the additions made thereto by Morris after his wife's death exceeded the amount of increased community indebtedness incurred by him to the extent of $5,000. We do not regard this finding as material to any issue in the case, but think there is evidence in the record to support it. If, as testified by the defendant A. W. Morris, the community estate at the time of his wife's death could not have been sold for more than fifty percent of the community indebtedness, that indebtedness being $57,500, it follows that said estate was not then worth more than $28,750. The total increase of indebtedness incurred by Morris for improvements is not shown to be more than $19,000. If the community estate was worth $58,000 at the time of the sale to Willis, according to these figures its increased value exceeded the community indebtedness incurred by Morris for improvements by a much larger sum than $5,000. We do not understand the trial judge to mean by this finding that the increase in the value of the property exceeded the entire increase in Morris' indebtedness, but only that portion of said increased indebtedness incurred for renewals and improvements made upon the community property and for which the corpus of the community estate was chargeable.

The fourth assignment of error assails the judgment of the trial court awarding the defendant A. W. Morris all the lands in controversy except the homestead and the Dan Thomas 300 acre tract, on the ground that such judgment is based upon the erroneous conclusion of fact that the judgment for $26,570 rendered in the District Court of Galveston County and under which said lands were sold, was a judgment for a community indebtedness, when the undisputed evidence shows that at least a large portion of the indebtedness for which said judgment was rendered was the separate indebtedness of A. W. Morris, and that the accounts between Willis and Morris had been so kept as to mingle and confuse the community and separate indebtedness as to render it impossible to determine what portion of said indebtedness was community and therefore the community estate could not be held liable for any portion of said indebtedness.

In support of this assignment appellants invoke the general principle that if a trustee mingles trust funds with his own the beneficiary may follow the trust funds and claim all of the property into which they have gone except such portions as the trustee can show were purchased by his separate funds. If it be conceded that the facts in this case show such a mingling of funds as to make it impossible to determine what portion of the indebtedness for which the judgment was rendered was community and what separate indebtedness of A. W. Morris, and the principle invoked applies generally in suits by heirs against the survivor of a community estate for their interest in such estate, it can have no application in this case for the reason that at no time after the death of Mrs. Morris and up to the time of the sale to Willis was the community estate of sufficient value to discharge the community indebtedness. This being true, the mingling of the accounts could

not have injuriously affected any right of plaintiffs and can not authorize the forfeiture of defendant's right to dispose of the community estate for the payment of community debts. Brown v. Bacon, 63 Texas, 598; Burkitt v. Key, 42 S. W. Rep., 231.

The proposition that a survivor of a community estate has the right to sell the community property for the purpose of paying community debts is too well settled to require citation of authority. It is immaterial how the application of the community property to the payment of community indebtedness is made if it is so applied in good faith and at its fair value. It may be by sale of the property and the application of the proceeds to the extinguishment of the indebtedness, or the survivor may pay the indebtedness out of his own funds and appropriate the community property if the value of such property does not exceed such indebtedness. Jennings v. Barton, 17 Texas Ct. Rep., 53. All of the community debts were paid by the defendant Morris, and the community estate used in making such payment not being greater in value than the amount of said debts, the plaintiffs have no interest in any of the property so disposed of by defendant and the trial court did not err in so adjudging.

Our conclusion, before stated, that the finding of the trial court that the community estate did not at the time of Mrs. Morris' death, nor at the time of its sale to Willis, exceed in value the community indebtedness, and that all of the property owned by Morris both community and separate, except his homestead and the Dan Thomas place, was turned over to Willis in settlement of all the indebtedness both community and separate due by Morris to Willis, disposes of the questions presented by the fifth and sixth assignment of error and said assignments are overruled.

The seventh and eighth assignments assail the findings of the trial court that the judgment against Morris in the District Court of Galveston County and the sale of the lands thereunder was regular in all respects and that there was no fraud in obtaining the judgment, nor in the sale thereunder to Willis, or the subsequent sale by Willis to A. W. Morris, on the ground that said judgment was not the result of any real litigation between the parties thereto, and said suit was not brought nor said judgment obtained for the purpose of collecting any debt due by Morris to Willis, but for the purpose of concealing and covering up the title to said land in order to defeat the claim of these plaintiffs and other creditors of said Morris.

We have already disposed of this assignment by the conclusion of fact that the entire transaction between Morris and Willis was free from fraud. Morris had agreed and contracted with Willis to deliver to him all of his property real and personal in satisfaction of all his indebtedness. Willis had a deed of trust on the lands to secure a large portion of this indebtedness and the proper way to protect his title to the land was by suit and foreclosure. Morris having agreed that Willis should take the land with the other property in settlement of the indebtedness, good faith on his part required

him not to attempt to defeat the suit brought by Willis to perfect his title. The agreement to turn over all of the property in satisfaction of all of the indebtedness having been made in good faith and not in fraud of any rights of plaintiffs or other creditors of Morris, the method by which the agreement was finally consummated was immaterial. The fact that Morris had the land conveyed to Carter could not, in view of all the evidence in the record, justify the conclusion that he acted fraudulently in these transactions.

There is no merit in the ninth and tenth assignments which assail the judgment generally on the ground that it is not supported by the evidence.

The eleventh, twelfth and thirteenth assignments assail the judgment upon practically the same grounds set out in the assignments we have before discussed, and for the reasons before stated can not be sustained. The sale of the personal property can not be considered as a separate transaction from the sale of the real estate. While the bill of sale to the personal property was made months before the deeds to the land, this was due to the method adopted in passing the title to the land which required the bringing of the foreclosure suit and a judicial sale thereunder. The agreement by which the indebtedness was settled, as before stated, disposed of all the property and the method by which that agreement was consummated became immaterial.

The fourteenth assignment complains of the judgment in that it fails to allow plaintiffs any recovery for the value of the cattle sold by the defendant A. W. Morris in 1898 for the sum of $450. The assignment can not be sustained because the evidence fails to show that the cattle so sold by Morris were community property of himself and Mollie P. Morris, or the increase from cattle belonging to said community.

The fifteenth assignment complains of the failure of the trial judge to give judgment for appellants for 13-28 of $2,500 which amount was the reasonable rental value of the homestead and the Thomas place during the time defendant Morris held exclusive possession of said property and collected rents therefrom. The liability of the survivor of the community to the heirs of the deceased spouse in respect to the rents of the community property is not that of a trustee, but of a tenant in common. Unless the right of the cotenant to the equal use and enjoyment of the property is denied by the tenant in possession, such tenant is not liable for rents for the use of the property. If, however, one tenant rents out the property and receives rents therefor he must account to his cotenant for his portion of the rents so received. Akin v. Jefferson, 65 Texas, 142. There is evidence that A. W. Morris received rents for this property, but the amount so received is not shown. Morris testified that he could not tell how much he had received, but it was less than the amount he had expended in improvements on the property. Such being the state of the evidence the trial court did not err in refusing to give judgment for plaintiffs for rents in any amount.

The sixteenth assignment of error complains of the failure of the

trial court to render judgment for plaintiffs for 13-28 of $128, that being the amount admitted by the defendant Morris to have been received by him as proceeds of the sale of a one-fifth interest owned by said community estate in a small tract of land in Titus County, Texas. The assignment should be overruled because the matter complained of was not called to the attention of the trial court by the motion for new trial, and for the further reason that the amount involved is so small that the maxim *"de minimis non curat praeter"* applies. .Defendant had paid the taxes on this land for a number of years, and deducting this amount the balance due the heirs of Mrs. Morris was not exceeding $45. Foster v. Van Norman, 1 Texas, 636.

The seventeenth assignment complains of the judgment of the trial court in awarding costs to the defendants Tharp & Griffith on their disclaimer. We think the court erred in adjudging generally that said defendants were entiled to recover their costs on said answer, because under the qualified disclaimer filed by them, before set out, they were not entitled to recover costs against the plaintiffs, but this error was rendered harmless by the final judgment which adjudged all costs against the defendant Morris.

We think none of the assignment present any sufficient grounds for the reversal of the judgment of the court below, and that it should be affirmed, and it is so ordered.

*Affirmed.*

Writ of error refused.