## J. F. DAVIS v. T. N. CARTER ET AL.

### Decided April 24, 1909.

**1.—Community Property—Sale by Survivor.**

In this State a surviving husband has the power, as such, to sell any of the community property of the marriage for the purpose of paying its community indebtedness. This right is not restricted by the failure of the survivor to qualify under the statute as community administrator, nor to personal property, rather than real estate, even though it be the homestead. All that is required is that there shall be community debts, and that the survivor shall make the sale in good faith for the purpose of paying such debts.

**2.—Same—Consideration.—Promissory Notes.**

In a suit by heirs of the deceased wife against an innocent purchaser of com-

munity property from a surviving husband, the execution of negotiable promissory notes for the purchase money of such property is as effectual as the payment of cash, in the absence of evidence that the notes had not been negotiated before maturity.

Appeal from the District Court of Fisher County. Tried below before Hon. C. C. Higgins.

*McCrea & Kirk,* for appellant.

*E. F. Campbell,* for appellee.

CONNER, Chief Justice.—In August, 1889, T. N. Carter purchased lots four, five and six, block fifty-nine, in the town of Roby, Fisher County, and he' and his then wife established thereon their homestead. After several years' occupancy of the homestead the wife died thereon leaving as survivors her husband, T. N. Carter, and four children, viz.: Samuel H., Grady L., Sylnet and Tommy Carter, born in 1894, 1895, 1897 and 1899, respectively, and all of whom are appellees herein. Later, T. N. Carter remarried and in March, 1906, he, joined by his present wife, by general warranty deed conveyed the whole of the property above described to J. F. Davis, the appellant in this case. At the time of the death of his first wife there existed community debts of T. N. Carter and his deceased wife amounting to about five hundred dollars, and the expenses of her last sickness and burial increased this amount to some one hundred dollars more. Of this marriage there also existed community property of the approximate value of eighteen hundred dollars, consisting of the above described homestead, worth five hundred or six hundred dollars, and of an interest in a mercantile business worth about twelve hundred and fifty dolars. T. N. Carter sold to Davis for the purpose of paying said community indebtedness, and in fact partly applied the proceeds of the sale in extinguishment thereof. Davis gave an adequate price in the form of two promissory notes, payable in December and January following the sale. At the time of the sale and the execution of the notes, Davis was without notice of any kind of the interest now claimed by said minor children in the homestead, but was informed of such interest about a month after the execution of his notes.

Upon the above state of facts, which are undisputed, the court awarded to said minor children, at the suit of T. N. Carter as father and next friend, an undivided one-half interest in the lots above described as the community interest inherited from their mother. In so doing we think the court erred, as appellant assigns.

It does not affirmatively appear that at the time Davis was informed of the asserted interest of the minors his notes had been negotiated (though possibly this is to be inferred), so as to bring him strictly within the protection of the rule of an innocent purchaser, as announced in Hill v. Moore, 62 Texas, 613; Edwards v. Brown, 69 Texas, 329; Pouncey v. May, 76 Texas, 565. But regardless of this question, which we find it unnecessary to decide, we think it must now be considered as settled law in this State that a sur-

viving husband has the power, as such, to sell any of the community property of the marriage for the purpose of paying its community indebtedness.   (Burkitt v. Key, 42 S. W., 231; Ashe v. Yungst, 65 Texas, 631; Cage v. Tucker Heirs, 25 Texas Civ. App., 48; Wenar v. Stenzel, 48 Texas, 485; Speer on the Law of Married Women, sections 375, 377, 390-393.)   This right, as must be held from the authorities referred to, is not restricted by the failure of the survivor to qualify under the statute as community administrator, nor to personal property rather than to real property, homestead though it may be.   All that seems to be required is that there shall be community debts, and that the survivor shall in good faith make the sale for the purpose of paying such debts, and neither of the requisites is wanting in this case.   The proof, as stated, of existing community indebtedness and that the property in controversy was sold by T. N. Carter for the purpose of paying the same, is undisputed.   The evidence does not suggest an inference of bad faith on Carter's part in so selling.   He testified on this subject as follows: "As to my having any other property that I might have applied on the settlement of these community debts that I have spoken of, will state that I had other property, but I deemed the other property necessary for the maintenance of myself and my children, and at that time I did not apply it to the discharge of the community debts at the death of my first wife."   Nothing in the evidence elsewhere indicates a want of fairness, or that it was injudicious to sell the homestead rather than his interest in the mercantile business.   Appellant's good faith also is undisputed.   He gave full value in the way of promissory notes which, at least in the absence of proof that they had not been negotiated prior to maturity, was as effectual as paying cash.   Cameron v. Romele, 53 Texas, 239.

We therefore conclude that appellant took full title as against all of the appellees, that the judgment must be reversed and here rendered for appellant, and it is so ordered.

*Reversed and rendered.*