### WORD v. COLLEY et al.

(Court of Civil Appeals of Texas. Texarkana. Jan. 11, 1912.)

1. HUSBAND AND WIFE (§ 268*)—COMMUNITY DEBTS—CHARGE AGAINST COMMUNITY PROPERTY.

A man, during his first marriage, acquired slaves constituting his separate property. After the death of his second wife, he executed an instrument, disclosing that during his second marriage he was, on a designated date, indebted to his children for the amount of the proceeds of a sale of the slaves, as their guardian, and executed a note to a daughter for the amount of her share, with interest from the designated date, and executed a deed of trust to secure such note, reciting that it was given for the daughter's portion of the slaves. *Held*, to show that he had given the slaves to his children, and that the obligation evidenced by the note was a community debt created during marriage, and the deed of trust was enforceable against the community property owned by himself and his second wife.

[Ed. Note.—For other cases, see Husband and Wife, Dec. Dig. § 268.*]

2. HUSBAND AND WIFE (§§ 268, 273*)—COMMUNITY PROPERTY—LIABILITY—"COMMUNITY DEBT."

A "community debt" is a liability made by a husband during marriage; and the husband surviving the wife may renew the community obligation and make it a charge on community property.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 953, 1011; Dec. Dig. §§ 268, 273.*

For other definitions, see Words and Phrases, vol. 2, p. 1343.]

3. MORTGAGES (§ 335*)—DEED OF TRUST—ENFORCEMENT.

Though a part of the debt secured by a deed of trust is invalid because excessive, the trustee may foreclose by sale for the amount legally due.

[Ed. Note.—For other cases, see Mortgages, Dec. Dig. § 335.*]

Appeal from District Court, Cherokee County; John C. Box, Special Judge.

Action by Horace Word against Thomas M. Colley and another. From a judgment for defendants, plaintiff appeals. Affirmed.

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

Appellant instituted the action of trespass to try title to an undivided half interest in 730 acres of land, part of the Brooks-Williams league of land in Cherokee county, Tex., described by metes and bounds in the petition. He claims it as being the community interest of his deceased mother, Mrs. M. A. Word, the second wife of Thomas J. Word, deceased. The appellee Mrs. Sarah M. E. Colley, who is joined by her husband, and who is a daughter of Thomas J. Word, deceased, by his first marriage, claims the land by a deed to her through trustee sale under a deed of trust. The deed of trust, it was claimed by Mrs. Colley, was executed by her father to secure her in the payment of a community debt owing by the community estate of himself and his second wife. There is involved on the appeal only the controversy as to the validity of the deed of trust under which appellee claims. Mary A. Word, mother of appellant, died on the 8th day of August, 1869. Thomas J. Word died May 25, 1890. On November 9, 1875, Thomas J. Word executed and delivered a deed of trust on the land in suit to Thomas M. Colley, trustee, to secure the recited indebtedness therein of $850 and interest due Mrs. Sarah M. E. Colley. The trustee, acting under the powers of the deed of trust, regularly sold the land to satisfy the indebtedness, and Mrs. Sarah M. E. Colley became the purchaser, and holds whatever title was conveyed by such trustee's sale. The court made the finding that: " (4) The community estate of T. J. Word and Mary A. Word was, at the time of the death of Mary A. Word, and on the 21st day of April, 1870, and on the execution of the deed of trust on the land in controversy, indebted to Sarah Mary Elizabeth Colley in an amount sufficient to justify T. J. Word in executing the deed of trust on the community estate to secure its payment." And on this fact the court made the conclusion of law: " (3) The deed of trust executed by T. J. Word on the land in question, for the purpose of securing the payment of a community debt owing by the estate of T. J. Word and Mary A. Word, was a valid one, and the sale thereunder passed the title of the community estate to the defendant."

E. C. Dickinson, Jos. P. Gibson, and Crow & Phillips, for appellant. Thos. B. Greenwood, for appellees.

LEVY, J. (after stating the facts as above). [1] The appellant by his assignments assails the foregoing finding and conclusion of law made by the court. It appears that the court based the finding that the community estate was indebted to appellee on the declaration of Thomas J. Word, as made in the memorandum and note, dated April 21, 1870, and in the recital in the deed of trust. It appears from the testimony that in 1844, and during the first marriage, Thomas J. Word, then living in Mississippi, purchased five slaves, one of whom was named Aaron, Sr., one Aaron, Jr., and one Robert. The slaves, it appears, were his separate property. Thomas J. Word was a distinguished lawyer in Mississippi and Texas, having represented Mississippi as a congressman at large, being the colleague of Sargent S. Prentiss. In December, 1856, and after his second marriage, he removed to Texas, and there continuously resided until his death. The memorandum and note, dated April 21, 1870, were written and signed by Thomas J. Word and delivered by him to his daughter, Mrs. Colley, the appellee. The memorandum reads: "Palestine, Texas, April 21, 1870. Thomas J. Word, natural guardian in account with his children Justinia, John J., Jefferson, Jr., and Sarah Mary Elizabeth Word, minors: 1863, January 1. To amount of proceeds of sale of negroes, as their natural guardian, Aaron and Rob, to Ira Pruett, Confederate money $3,400.00, to be divided between four children, $850.00 each—$3,400.00 bearing interest at 8% per annum. Paid off in full Justinia (now Mrs. Hunter), John J. and Jefferson, Jr., their respective shares, leaving still due to Sarah M. E. (now Mrs. Colley) this sum of $850.00. Interest from January 1, 1863, to April 1, 1870—7 years and 3 months—$493.00. Amount due Mrs. Colley to this date this sum $1,343.00. But interest should be computed on $850.00 from January 1, 1863, not compounding interest. I think this is right, as most of the money received for the negroes fell dead on my hands; but this is not the fault of my children but my misfortune. I have made the above statement to show how the matter stands and executed the note below to place the debt in a tangible form. [Signed] T. J. Word." The note reads: "$850.00. On demand I promise to pay my daughter Sarah Mary Elizabeth Colley or bearer, the sum of eight hundred and fifty dollars in specie with interest thereon at 8% per annum from January 1, 1863, for so much received by me for her as her natural guardian for the sale of her negroes on that day, the above sum being her share of proceeds." The recital in the deed of trust was: "Whereas I, Thomas J. Word, of the county and state aforesaid, am indebted to my daughter Mary Sarah Elizabeth Colley, formerly Mary Sarah Elizabeth Word, now wife of Dr. Thomas M. Colley, for money received by me as her natural guardian on January 1, 1863, for her portion of the negroes belonging to my four children Justinia, John J., Jefferson and the said Mary Sarah Elizabeth and sold by me; and whereas, I have not paid the same nor the interest, but have kept the debt up by renewal of my note; and whereas, I am desirous to secure the said debt, being $850.00 with interest thereon at 8 per cent. from January 1, 1863."

[2] The evidence is sufficient, we think, to warrant and support the finding of the court that the slaves were the property of the children by transfer or gift from the father, Thomas J. Word. The slaves were the separate property of Thomas J. Word at the time of the transfer or gift to the children, and this is admitted by the record, and, being his separate property, no question could arise as to his right to make a valid transfer or gift of them to his children. His admission, against his own separate estate's adverse interest, that the slaves were "her negroes," and he recognized them to be their property and not his, necessarily involves that all things had been done which were essential to vest the children with title, and the court was warranted in so inferring from the admission. It sufficiently appearing that the slaves were the property of the children, one of which was appellee, then the legal effect of the conversion of the slaves by Thomas J. Word on January 1, 1863, was to create an indebtedness or liability to appellee on that date for her one-fourth the value of the slaves. Thomas J. Word, by his written admission, without legal right, sold the slaves on January 1, 1863, for $3,400, and never accounted to appellee for her interest in the proceeds. The legal effect of the conversion of the slaves by Thomas J. Word being to create an indebtedness or liability on January 1, 1863, to appellee for her one-fourth interest in the value of the slaves, and his second wife, Mary A. Word, being then living, and Thomas J. Word admitting the liability or an indebtedness for the conversion and reducing same to a note, the question of the liability of the community estate for the debt created by the husband is presented. Being an obligation or debt created by the husband during marriage, it should be said that it legally created a charge upon and burdened the community property with the liability for its payment. Hinzie v. Robinson, 21 Tex. Civ. App. 9, 50 S. W. 635; McKinney v. Nunn, 82 Tex. 44, 17 S. W. 516; Carter v. Conner, 60 Tex. 52. The Hinzie Case, supra, was where the husband became a surety on a county treasurer's bond, and the court there said: "In general terms, a community debt may be said to be any debt or liability made by the husband during marriage." For reference: Moody, Adm'r, v. Smoot, 78 Tex. 119, 14 S. W. 285. As to the power of the husband here to sell the land to pay the community debt, see Barrett v. Eastham, 28 Tex. Civ. App. 189, 67 S. W. 198; Davis v. Carter, 55 Tex. Civ. App. 423, 119 S. W. 724. Being a community debt, the power of the survivor to extend and renew the community obligation existed; and therefore Thomas J. Word had the power to renew the note, as he said he did. Morris v. Morris, 47 Tex. Civ. App. 244, 105 S. W. 242.

[3] It is true that Mr. Word says he sold the slaves for $3,400 Confederate money in 1863, and that he admitted liability and made the note payable in specie. The bare fact that Mr. Word received in exchange for the slaves Confederate money then in use and circulation, and made the obligation, to secure which the deed of trust was made, payable in specie, would not defeat the power of the trustee to make sale under the trust deed. T. J. Word was liable in conversion for the reasonable value of the slaves at the time. It is not denied that the slaves at that time had some value. It does not appear what was their value, except the admission of Mr. Word that he sold them for $3,400 Confederate money. His admission of the fact of conversion, and that he was liable for $850 to appellee, in the absence of proof of a contrary value, would be at least sufficient to sustain the finding of the court that T. J. Word was indebted in an amount sufficient to justify him in executing the deed of trust. Even if a part of the amount of $850 was invalid as excessive value for the conversion, and there is no evidence to say it was excessive, still the trustee would have the power to make sale under the trust deed. In Groesbeck v. Crow, 85 Tex. 200, 20 S. W. 49, it was held that a trustee with power to sell the land has the power and can act under the power, "so long as any sum was due on the note" secured by the trust.

We therefore think the finding and conclusion of the court is and should be sustained. It follows that the judgment should be affirmed, and it is so ordered.