## COMMONWEALTH BUILDING & LOAN ASS'N v. HOWARD et al.

### No. 2839.

Court of Civil Appeals of Texas. El Paso.
June 8, 1933.

Victor H. Hexter and E. M. Reichman, both of Dallas, for appellant.

Austin S. Dodd, of Dallas, for appellees.

PELPHREY, Chief Justice.

On April 13, 1907, Mary and Ida Carter conveyed, by warranty deed, lot 12, block A, of Rosedale addition to the city of Dallas, to E. B. Bluitt; the consideration being $230, $10 cash and one note for $220, to be paid $15 on June 1, 1907, $25 on September 1, 1907, and the balance in monthly installments of $10 each until fully paid. A vendor's lien was retained in said deed. Bluitt built a house on the lot, and moved his family thereon in 1907. At the time he acquired the property, Bluitt's family consisted of his wife, Rebecca, and four children, Bessie, who is now the wife of Charlie Howard, James, Jesse, and an unnamed child which died in infancy. In May, 1908, his wife, Rebecca, died while living on the property; she died intestate, and there was no administration on her estate. Several years thereafter Bluitt married Sadie L. Bluitt, and was divorced from her May 22, 1920. No children were born to this union. James Bluitt, on February 12, 1931, conveyed his interest in the property to Jesse Bluitt, but there has been no transfer of their interest ever made by either Jesse Bluitt or Bessie Howard. After the death of Rebecca Bluitt, E. B. Bluitt mortgaged the property several times, but none of such mortgages was executed for the purpose of paying any community debts of himself and Rebecca Bluitt. On April 1, 1920, Bluitt and his wife, Sadie L. Bluitt, executed a deed of the property to Ross M. Scott and Johnson J. Fagan, lawyers, for the purpose of securing or raising money to pay their fee for defending Bluitt in a criminal action. On July 16, 1920, Scott and Fagan conveyed the property to Mrs. A. C. Greenman. On July 29, 1920, Mrs. Greenman, acting through her attorney in fact, O. F. Ansley, conveyed the property back to Bluitt. The consideration for this conveyance was $864.90, evidenced by two notes, one for $264.90, due October 16, 1920, and one for $600, due December 31, 1920, both secured by a deed of trust on the lot. On July 22, 1923, Bluitt mortgaged the property to Rosser Thomas to secure the payment of a $500 renewal note held by Ansley. Thomas, on December 17, 1926, transferred his mortgage lien for the balance due to W. D. Anderson, as guardian. About August, 1928, the said lien and note was transferred to appellant. On April 10, 1928, Bluitt executed his note for $475, due 60 days after its date, to J. Foree Morgan to pay for certain improvements on the property, and executed a mechanic's lien thereon to secure its payment. This note was transferred to appellant after its maturity. On August 21, 1928, Bluitt executed to appellant a deed of trust in the sum of $1,200, payable in 123 installments of $16 each. This note included the following debts: $455 balance of note of December 17, 1926; $457 note to J. Foree Morgan, and $80.64 for taxes for years 1923 to 1927, inclusive. On March 16, 1931, J. H. Hill, trustee in the above deed of trust, foreclosed the deed of trust lien and sold the property at trustee's sale to appellant. Appellant thereafter filed this suit in trespass to try title against E. B. Bluitt, Flora McDade, a widow, and against

interveners James Bluitt, Jesse Bluitt, and Bessie Howard.

Flora McDade answered by disclaimer, and the interveners, James Bluitt, Jesse Bluitt, and Bessie Howard, answered by general demurrer, a plea of not guilty, and sought affirmative relief alleging that they were the only children and descendants of E. B. Bluitt and his wife, Rebecca Bluitt; that Rebecca Bluitt and E. B. Bluitt acquired the property in controversy in 1907; that it became their community homestead, and remained such until Rebecca Bluitt's death; that they were all minors at the time of Rebecca Bluitt's death; that they and E. B. Bluitt continued to occupy the property until dispossessed by appellant under writ of sequestration; that Bessie Howard continued to occupy the property jointly with the others from her mother's death until her marriage; that she had, except for short intervals, lived on the property jointly with the other children and her father; that, at the time appellant obtained the deed of trust from E. B. Bluitt, they all lived upon the property; that three years after their mother's death E. B. Bluitt married S. L. Bluitt, and that they lived on said property together with the interveners until 1922, when S. L. Bluitt left the property; that E. B. Bluitt, ever since the death of their mother, had recognized the fact that interveners owned by inheritance their mother's one-half interest in the property subject to his homestead rights therein; that, if E. B. Bluitt executed any instruments purporting to convey full title to the property, under which appellant claims, at such time appellant had actual as well as constructive knowledge of the interest of interveners; that, at and before the time E. B. Bluitt executed the mechanic's lien to J. Foree Morgan, he (Morgan) had knowledge of intervener's interest; that said note described in the mechanic's lien was transferred to appellant after maturity; that Anderson, who transferred to appellant the $455 note, secured by a lien on the property, knew at the time the note was executed of the interest of interveners in the property; that said note was also transferred to appellant after maturity; that Jesse Bluitt and Bessie Howard were the owners of a one-half interest in the property; and that, if appellant owns E. B. Bluitt's one-half interest, same is not subject to partition and should be sold. Interveners prayed for judgment decreeing to them a one-half interest in the property, one-half the rental value of the land from March 31, 1931, that the court appoint a receiver to sell the property and divide the proceeds.

E. B. Bluitt filed a general demurrer, a general denial, and adopted the answer of interveners.

Appellant, by supplemental petition, demurred generally to the answers of interveners and E. B. Bluitt, specially excepted thereto, pleaded not guilty, and specially denied the allegations thereof.

The cause was tried to the court, and resulted in a judgment decreeing appellant to be the owner of a one-half interest in the property, a two-sixths interest to Jesse Bluitt, and a one-sixth interest to Bessie Howard. Flora McDade, E. B. Bluitt, and intervener James Bluitt were divested of all interest in the property. The court also adjudged the property not susceptible of partition, and appointed a receiver to sell the property, and ordered that the proceeds thereof be partitioned among those decreed to be entitled thereto, according to their respective interests.

Appeal was perfected to the Court of Civil Appeals for the Fifth district and later transferred to this court.

## Opinion.

Appellant's brief contains nineteen assignments of error; the same being briefed under seven propositions.

Propositions 1 and 2 question the trial court's action in overruling appellant's general demurrer to the amended answer and cross-action of appellees, because in said answer and cross-action they fail to allege that all of the intermediate grantors through whom appellant claims had notice of appellees' equitable claim at the time they each acquired their interest or that they did not pay value for same and because there was no allegation in said answer and cross-action showing a lack of authority to convey in the holder of the legal title against whom the equitable claim arose and through whom appellant claims.

■ It is well settled in this state that, where land belonging to the community of husband and wife is deeded to one of them, that one has the legal title and the other has only an equitable title. Mitchell v. Schofield, 106 Tex. 512, 171 S. W. 1121. Therefore interveners in this case, having only the title which their mother had, were vested with only an equitable title.

■■ It appears to be equally as well settled that one having only an equitable title has the burden resting upon him to show that his equitable title is superior to that of the holder of the legal title, which carries with it the burden of showing that the purchaser of the legal title had notice of the existence of the equitable title or that he failed to pay value for the land. Huling v. Moore (Tex. Civ. App.) 194 S. W. 188 (writ refused) and authorities cited. When land once becomes freed from equities by a bona fide purchase by one having no notice of the equities, such purchaser obtains a complete jus disponendi, and any one who takes title from him takes it free from said prior equities, notwithstanding he may have notice thereof at the time

he buys. Grace v. Wade, 45 Tex. 522; Lewis v. Johnson, 68 Tex. 450, 4 S. W. 644.

It follows from these rules that interveners here, before they could recover, would be called upon to show that the land was not free from the equity in the hands of any of the intermediate vendors of appellant. Kinard v. Sims (Tex. Civ. App.) 53 S.W.(2d) 803, and cases cited.

Having the burden to establish these facts, we are of the opinion that a failure to allege them would render their pleading subject to general demurrer.

Appellant's first assignment is accordingly sustained, and the judgment is reversed and the cause remanded.