**DORSEY et al. v. TEMPLE et al.**

No. 3479.

Court of Civil Appeals of Texas. El Paso.

March 11, 1937.

Rehearing Denied April 1, 1937.

988

L. L. Geren and L. W. Shepperd, both of Groesbeck, and T. H. Bonner and J.

G. Anderson, both of Fairfield, for appellants.

James & Conner and E. E. Sanders, all of Fort Worth, C. S. Bradley, of Groesbeck, and B. R. Reeves, of Palestine, for appollees.

WALTHALL, Justice.

This suit was brought in trespass to try title. For convenience, and to follow the scheme of appellants' brief, the parties will be designated as in the trial court. By the term "plaintiff" we shall refer to the appellant Ollie Mae Dorsey, she being the real party at interest, her husband, Lapoleon Dorsey, having been joined pro forma.

Plaintiff claims an undivided 7/12 interest in the 198.8-acre tract described in her petition. Her title, legal and equitable, to such interest, originated by inheritance, 6/12 from her mother, Amanda Miller, and 1/12 from her father, C. A. Miller. These parties were negroes.

In 1906, the land in controversy was conveyed by Mollie T. Ratcliff to C. A. Miller. At that time C. A. Miller was living with his first wife, Amanda, and their only child was Ollie Mae, the plaintiff herein. Presumably, the land was community property.

In 1907, Amanda Miller died intestate, leaving plaintiff as her only heir.

In 1908, C. A. Miller married his second wife, Roxie, they being divorced in 1917. There were no children of this second marriage and the wife, now Roxie Green, is asserting no interest in the property in controversy, nor is she a party to this suit.

In 1918, C. A. Miller married his third wife, Isadora, by whom he had five children, viz.: Jimmie J., Doris, L. F., Lewis, and Linkie Lee Miller who married Willie J. Smith.

In 1925, C. A. Miller died leaving as his heirs the plaintiff Ollie Mae Dorsey, the five children by his third wife, Isadora Miller, and the third wife herself.

Thus plaintiff acquired, and claimed, by inheritance from her mother, Amanda Miller, the equitable title to an undivided 1/2 (or 6/12) interest in the land in controversy, and from her father the legal title to an undivided 1/12 interest therein; the five children of Isadora Miller, the third wife, acquired a 5/12 interest; and the third wife, Isadora Miller, acquired

a life estate in 1/3 of C. A. Miller's 1/2 interest.

In the deed from Mollie Ratcliff to C. A. Miller, the vendor's lien was expressly retained to secure the payment of two notes for $200 each, payable November 1st of 1907 and 1908, respectively. These notes were transferred to J. B. Wynne, and were released by him on November 2, 1909. However, on January 7, 1911, C. A. Miller executed two notes to R. S. Shapard, trustee, for $175 each and, as security therefor, executed a deed of trust on the 198.8-acre tract in controversy, in which deed of trust it was recited that "the above notes were executed by me for money furnished to me by said R. S. Shapard, Trustee, for the purpose of paying a balance of $85.00 due by me as purchase money for said property and for the payment by me of $265.00 for the material and labor necessary to build a fence around said premises * * * and I hereby acknowledge in favor of R. S. Shapard, Trustee, his successors and assigns, the vendor's and materialman's and mechanic's lien against said premises," etc. Thereafter, in 1913 and 1917, C. A. Miller executed extensions, new notes, additional liens, etc., all covering the land in controversy, and some of them covering an additional 140 acres, and there were various transfers of such from holder to holder. C. A. Miller was a railroad employee and lived at Hearne, Robertson county, Tex., most of the time after his first wife, Amanda, died. His second wife, Roxie, who married him in 1908 and divorced him in 1917, testified that she never heard of his living on the land in controversy except for the year 1917.

On May 2, 1921, the Guaranty State Bank of Palestine and J. E. Angly transferred to the Federal Land Bank of Houston certain (but not all) of the notes and liens so executed by C. A. Miller and held by them, and on the same date, C. A. Miller and his third wife, Isadora, executed a renewal note to the Federal Land Bank for the sum of $1,000, payable in thirty-six semiannual installments, and a renewal deed of trust on the 198.8 and 140-acre tracts, in which the history of the transferred debts and liens was traced.

After the death of C. A. Miller in 1925, plaintiff made some payments on these debts. In 1927, she approached the defendant A. L. Temple for assistance, and

on May 16, 1927, said defendant purchased and extended the debt held by J. E. Angly and the East Texas National Bank of Palestine, successor of the Guaranty State Bank, on which there was a balance then due of $429.25, the extension agreement and a new deed of trust in favor of Temple being executed by plaintiff Ollie Mae Dorsey, joined by her husband, and by Isadora Miller, individually and as guardian of the estate of her five children; and, on the same date plaintiffs conveyed to Temple an undivided 1/160 interest in the minerals in "our undivided 1/12 interest" in the land, which Temple testified, without contradiction, was a "bonus" for his act in taking up and extending the debt.

On February 27, 1929, the debts remaining unpaid, plaintiff, joined by her husband, executed a warranty deed conveying the 198.8-acre tract in controversy, as well as the 140 acres, to defendant A. L. Temple in consideration, as recited in the deed, of his cancellation of the above-mentioned debt for $429.25, and his assumption of the $1,000 indebtedness held by the Federal Land Bank. The testimony disclosed a further consideration, in no wise mentioned or referred to in the deed, i. e., a promise by defendant A. L. Temple to pay off all the debts against the land, including $142.72 in delinquent taxes, and to reconvey to plaintiff 58 acres out of the 198.8-acre tract, to include her home, free of encumbrance; but as to this, the details of which are hereinafter more fully set out, the evidence was insufficient to identify the 58 acres to be reconveyed, and there was a dispute as to whether, in making the reconveyance, defendant Temple should have the right to reserve title to the minerals in the 58 acres, which dispute was submitted to and answered in the negative by the jury.

This suit was filed by plaintiffs against the defendant A. L. Temple and those claiming under him, including these defendant royalty purchasers, to set aside the renewal deed of trust and the 1/160 mineral deed given Temple in 1927, and their deed of February 27, 1929, on the ground of fraud and want of consideration, etc., and against the Federal Land Bank to cancel the lien held by it on the ground that said lien had been created by C. A. Miller after the death of plaintiff's mother and was, therefore, not valid as to 6/12 of plaintiff's 7/12 interest. Isadora

Miller and her five children were made parties defendant, they being parties to the renewal agreement and the deed of trust executed in favor of A. L. Temple in 1927.

Plaintiffs alleged their conveyance to defendant A. L. Temple of February 27, 1929, and the subsequent conveyance by Temple, on June 7, 1933, to the defendant Federal Royalties Company of an undivided 1/2 interest in the minerals in the entire 198.8-acre tract, but they nowhere alleged that the Federal Royalties Company took with actual or constructive notice of their rights. As incident to their pleas of limitation and homestead, they did allege, however, that they had been in actual possession of the property at all times since January 1, 1919.

It was stipulated by all parties in open court that the oil and gas leasehold interest in the land (7/8 of the minerals) was not involved in the litigation, and the holders of the oil and gas lease were not made parties to the suit.

The jury found that the land described in plaintiff's petition was the homestead of C. A. Miller and wife, Amanda Miller, at the time of the latter's death (in 1907); that the Federal Land Bank had constructive notice of plaintiff's interest in the land at the time it acquired its liens from the Guaranty State Bank of Palestine in 1921; that the defendant A. L. Temple had constructive notice of plaintiff's interest in the land at the time he acquired his lien from the East Texas National Bank in 1927; that Temple did not pay any consideration for the 1/160 mineral deed he got from plaintiffs in 1927 (when he took up and renewed the East Texas National Bank $429.25 debt); that before the defendant Federal Royalties Company purchased from Temple its 1/2 mineral interest in the land, it received and relied upon the advice of a lawyer who was understood to have examined and to be familiar with the title to the land, to the effect that such title was good in A. L. Temple and his assigns; that before the defendant Federal Royalties Company purchased its said mineral interest from Temple, it found out and relied upon the fact that there was on record in Anderson county a deed from plaintiffs conveying the land to A. L. Temple; that it was not agreed that Temple should reconvey to plaintiff merely the surface rights in 58 acres of land; and that plaintiff Ollie Mae Dorsey did not represent to Temple prior to the date he purchased the $429.25 note from the

East Texas National Bank, that said bank had a mortgage on the land to secure the payment of said note; and that the consideration for the deed of February 27, 1929, from plaintiffs to defendant A. L. Temple was that the latter should pay off and discharge all the indebtedness against the land and reconvey 58 acres of said land to plaintiff Ollie Mae Dorsey.

The judgment entered, besides canceling the .mineral deed above mentioned and the lien of the Federal Land Bank (as to plaintiff's interest in the 198.8-acre tract), was that plaintiff take nothing as against defendants A. E. Burgin and Roy H. Laird, and that plaintiff's prayer for the cancellation of her deed to defendant A. L. Temple be denied, but "without prejudice, except as regards the defendants Roy H. Laird and A. E. Burgin, to the rights of plaintiff Ollie Mae Dorsey, to which reference is hereinabove made, growing out of the written agreement executed by the defendant A. L. Temple on or about February 27, 1929, by which said defendant obligated himself to reconvey to said plaintiff, at a time not made certain by the evidence in this case, 58 acres of land (including the mineral interest therein) to be surveyed out of the northeast corner of the 200 acre tract and in such manner as to include the homesite occupied by plaintiffs." It was recited in the judgment that plaintiff could not be awarded, in this proceeding, the 58 acres which defendant A. L. Temple had agreed to reconvey to her "because of the insufficiency of the pleadings and the evidence in this case to definitely locate and describe said 58-acre tract."

So far as this record shows, none of the defendants are complaining of the judgment. Apparently, the Federal Land Bank is making no complaint of the decree canceling its lien as to the entire interest claimed by plaintiffs, the proof showing that its original debt of $1,000 has been materially reduced since 1921, and its lien is unquestioned as to 5/12 interest in the land and as to the mineral leasehold estate therein.

The real issues involved in this appeal, as we conceive them, are: (1) Whether plaintiffs are entitled to rescission or cancellation of the deed of February 27, 1929, by which they conveyed the land in controversy to. defendant A. L. Temple, on account of the fraud alleged; (2) whether plaintiffs were entitled, under the pleadings and the evidence in this case, to specific performance of defendant Temple's promise to reconvey to plaintiff Ollie Mae Dorsey 58 acres of land; and (3) whether, in any event, plaintiffs are entitled to recover against the defendants A. E. Burgin and Roy H. Laird, who claim an undivided ½ interest in the minerals in the land by purchase from and under the defendant A. L. Temple.

Lesser points involve the correctness of the court's action in submitting and refusing to submit issues to the jury.

### Opinion.

Plaintiffs submit error in the court's refusal to submit their special charges Nos. 1, 2, and 3 for an instructed verdict in their favor.

The first submitted special instruction requested was for a verdict in plaintiffs' favor as to all defendants for an undivided one-half interest in the 198.8 acres of land in controversy, at times referred to in the record as 200 acres; the second requested· instruction was as against defendants A. L. Temple, A. G. Temple and Doris Temple; the third requested instruction was as to defendants A. E. Burgin, Roy H. Laird, and the Federal Land Bank. The court refused to give each of the requested instructions.

We think the court was not in error in refusing to give the requested instructions.

■ Plaintiffs having expressly pleaded, and the undisputed evidence having shown that plaintiffs conveyed to defendant A. L. Temple under whom Burgin and Laird claim, all of their interest in the land in controversy, by deed dated February 27, 1929, and plaintiff having alleged that said deed was procured from them by fraud, and having prayed for cancellation of said deed on the ground of fraud, plaintiffs' suit was primarily one for rescission and cancellation, and plaintiffs were not entitled to recover said land, but were bound by their deed until and unless they should succeed in establishing the allegation of fraud upon which they relied for cancellation; and since there was no finding of fraud, or evidence sufficient to establish the fraud alleged, plaintiffs were not entitled to a judgment canceling the deed, or recovering the land, and the court did not err in refusing plaintiffs' request for an instructed verdict, and, we might add, in overruling their motion for judgment.

Plaintiffs' deed of February 27 was not void, but voidable only, depending on the proof of the fraud alleged.

■ The Supreme Court had before them the question presented here in Deaton et al.

v. Rush et al., 113 Tex. 176, 252 S.W. 1025, 1031. In that case Judge Hamilton, for the Commission of Appeals, said: "A deed obtained by fraud is not void but voidable only. As between the original parties Rush's title is prima facie good, and it could only be avoided by a suit and a decree annulling and canceling the deed. Cook v. Moore, 39 Tex. 255." Michna v. Crane (Tex.Civ. App.) 28 S.W.(2d) 837.

The burden of proof was upon plaintiffs to establish the acts of fraud alleged. 7 Tex.Jur. 989, § 64. On the burden of proof plaintiffs refer to article 4004, Revised Civil Statutes, providing that in actionable fraud the burden shall be on the party making such promise to show that it was made in good faith, and show good reason for not complying therewith. However, in Clem v. Evans (Tex.Com.App.) 291 S.W. 871, 51 A.L.R. 1135, it is held that the provisions of article 4004 with reference to presumption of burden of proof is prohibited by section 19 of our Bill of Rights.

The court refused to submit plaintiffs' requested charges to find as follows: Whether A. L. Temple in procuring the deed conveying to him the land in controversy, promised that he would pay "off all indebtedness against the land and reconvey to plaintiff Ollie Mae Dorsey 58 acres of said land, to be selected by her, and to find whether when he made such promise, if he did, did he intend to keep such promise," and to find whether A. L. Temple represented to plaintiff in procuring said deed that the purported outstanding liens on said property were valid liens; and, if the last above inquiry was answered in the affirmative, then to find whether plaintiff relied upon said representations as to the validity of such liens.

Plaintiffs specially pleaded that "on the 27th day of February, 1927, plaintiffs executed a deed conveying their interest in and to the 198.8 acres of land above described to the said A. L. Temple," and that "said deed is recorded," stating the place of its record. Plaintiff introduced the deed in evidence "for the purpose of attacking same"; the deed was likewise introduced in evidence by defendants for all purposes. Plaintiffs further alleged the conveyance by the Temples to the Federal Royalties Company of an undivided ½ interest in the minerals in and under said 198.8-acre tract of land and the subsequent conveyance from the Federal Royalties Company to Burgin

and Laird. These conveyances were introduced in evidence by defendants.

Plaintiff Ollie Mae Dorsey, in 1927, was being pressed by the Federal Land Bank on the several indebtedness secured by the deeds of trust, and the delinquent taxes. In May of that year A. L. Temple took up from the East Texas National Bank, and extended some of the indebtedness and advanced the money to pay the taxes, taking renewal notes therefor signed by plaintiffs and Isadora Miller, individually and as guardian of the estate of her five minor children; in 1929, the renewal notes not being paid, the deal was made whereby plaintiffs conveyed the land in controversy, and also a tract of 140 acres, to A. L. Temple who canceled the notes then held by him, assumed the payment of Federal Land Bank $1,000, and agreed to reconvey to plaintiff Ollie Mae Dorsey 58 acres free of incumbrance.

In order to avoid the effect of the conveyance to Temple plaintiffs alleged that Temple had procured such conveyance by fraud upon them in two respects; that Temple had represented to plaintiffs that the owner of the two deeds of trust liens executed by C. A. Miller were threatening to foreclose said two deeds of trust liens; and that Temple had represented to plaintiffs that if they would execute to him a deed conveying all their interest in the land he, in turn, would reconvey to plaintiff Ollie Mae Dorsey 58 acres of said land out of the 198.8-tract to be selected as soon as he could have said 58 acres surveyed; that Temple did not intend, at the time of the execution to him, and his written agreement, to reconvey the 58 acres to plaintiff Ollie Mae Dorsey, to comply with said reconveyance agreement, but that said agreement was made by Temple with the fraudulent intent and purpose of defrauding plaintiffs of their interest in said land.

Temple pleaded in effect that the parties discussed the proposal of said conveyance for some time and finally agreed that plaintiffs would convey to him their interest in the 198.8 acres and that he would cancel the indebtedness held thereon by him and would reconvey to plaintiff the surface estate in 58 acres of said land for her use as a home, reserving to himself all mineral interest therein; that he would make such reconveyance as soon as he could pay off the Federal Land Bank loan; but that it was distinctly understood and agreed by him and

plaintiff, Ollie Mae Dorsey, that all mineral in said land would be retained and held by him, Temple, plaintiff stating that she was not interested therein. The Federal Land Bank's deed of trust provided that the debt secured thereby might be paid any time after five years from the date thereof, that is, after May 2, 1921.

The question here relates to plaintiff's right to cancellation of her deed on the ground of the fraud alleged, and to the court's action in overruling her request for an instructed verdict. The burden was upon plaintiffs to prove the acts of fraud alleged. Clem v. Evans, supra; Michna v. Crane (Tex.Civ.App.) 28 S.W.(2d) 837; 7 Tex. Jur. 989, § 64, and cases in notes.

The evidence offered on the trial is extensive. We have carefully reviewed it and believe the evidence is not sufficient to show the fraud alleged. Plaintiff admitted the threatened foreclosure suits before she talked to Temple. Temple admittedly paid out over $1,100 on the lien indebtedness. Temple testified: Had a discussion with her (Ollie Mae Dorsey) about the mineral interest in that land in 1927. "She told me all she wanted was a place to live and raise her children and she didn't care anything about the mineral rights. As well as I remember I gave Ollie Mae an agreement that as soon as I could pay the Federal Land Bank off I would deed her 58 acres, and it was thoroughly understood between she and I at the writing of the first instrument that it be 58 acres of the surface and she would have no rights to the minerals." We have not found in the evidence any denial of the above statement of Temple, and appellants have pointed out none.

■ The liens, with the foreclosure of which plaintiff was threatened in 1927, having been created by C. A. Miller, the holder of the legal title, were prima facie valid and enforceable against the entire fee-simple interest in the land; there was neither pleading nor evidence sufficient to rebut such presumption, or to show that such liens could not have been enforced as against the ½ interest in said land inherited by plaintiff from her mother, Amanda Miller; hence, the agreement providing for the discharge of said liens by Temple and the securing for plaintiff of 58 acres of land, to be surveyed out so as to include her home, free of encumbrance, was fair and was supported by sufficient consideration.

■ Where land purchased with community funds is conveyed to the husband, the legal title thereto is vested in him although he holds in trust for the wife her community interest of ½; and where, in such case, the wife dies and thereafter the husband encumbers or conveys the land, the burden is upon the heirs of the wife to prove that grantee or mortgagee took with notice of their rights. Mitchell v. Schofield, 106 Tex. 512, 171 S.W. 1121; Howard v. Commonwealth Building & Loan Association (Tex.Com.App.) 94 S.W. (2d) 144.

■ One who purchases the legal title to the land, for value and without notice of undisclosed equities, takes free of such equities, and is protected in his rights of ownership, including the right to sell and convey perfect title; and a purchaser from him takes good title, even though he may have actual or constructive notice of such outstanding equities. Kinard v. Simms (Tex.Civ.App.) 53 S.W.(2d) 803, 806 (writ refused); Commonwealth Bldg. & Loan Ass'n v. Howard (Tex.Civ.App.) 61 S.W.(2d) 546, affirmed (Tex.Com.App.) 94 S.W.(2d) 144; Huling v. Moore (Tex. Civ.App.) 194 S.W. 188, 192 (writ refused); Benn v. Security Realty & Development Co. (Tex.Civ.App.) 54 S.W.(2d) 146 (writ refused).

We refer to the preliminary statement of the case without restating them here. The jury found that the Federal Land Bank had notice of the facts sufficient to put a reasonably prudent person on inquiry which if pursued with ordinary diligence would have led to a discovery of Ollie Mae Dorsey's interest in the land at the time it took the transfers from the Guaranty State Bank in May, 1921; and the jury found that A. L. Temple had such constructive notice at the time he took the transfer of the deed of trust from the East Texas National Bank on May 16, 1927. But there is in the record no allegation or proof that the predecessors in title of the Federal Land Bank and A. L. Temple, or any of the Temples, had notice, actual or constructive, of plaintiff Ollie Mae Dorsey's rights at the time they acquired the original liens in 1911, 1913, and 1917, respectively.

In consequence of the above rules, and in the absence of any showing to the contrary, we must assume that Shapard, Myers, and the Guaranty State Bank of Palestine and their assigns, the Federal Land

Bank of Houston and A. L. Temple had liens which could have been enforced against plaintiff's interest in the land in controversy in 1927.

Plaintiffs made timely objections to the submission of issues 12, 13, 14, and 15, to find whether before the Federal Royalties Company purchased from A. L. Temple an undivided ½ interest in the 198.8-acre tract of land, Burgin, as agent of the Royalties Company, made inquiry of a lawyer as to the condition of the title and the advice given him; and whether Burgin, before the purchase, found that there was on record a deed executed by plaintiffs conveying the land to Temple; and whether Burgin, in making the purchase, relied on the fact that said deed was on record. The jury found said issues in the affirmative.

Plaintiffs' objections to the submission of the issues are to the effect that they are immaterial, call for evidentiary findings, they form no basis for any judgment, they form no excuse for Burgin's failure to make inquiry and take notice as to the contents of the record.

The judgment entered is noted in the preliminary statement. Under plaintiffs' pleading, the 58 acres of land out of the 198.8-acre tract to be selected by her was to be reconveyed to plaintiff Ollie Mae Dorsey by A. L. Temple, "as soon as could have the said 58 acres surveyed." The 58 acres was not further identified in the pleadings or evidence except that it was to be in the northeast corner of the larger tract and so as to include her home. Plaintiff Ollie Mae Dorsey had no title to any particular 58 acres, or undivided 58 acres, but only an executory contract with A. L. Temple for the reconveyance to her of a divided, as distinguished from an undivided 58 acres to be surveyed out of the larger 198.8-acre tract so as to include her home; there was a lack of pleading and evidence to show that such 58 acres had ever been surveyed or in any way identified, or to show where plaintiff's home was on the ground. We think the court was not in error in concluding that relief could not be awarded plaintiff, but, in this respect judgment was entered without prejudice, except as regards Burgin and Laird. Dull v. Blum, 68 Tex. 299, 4 S.W. 489; Hanrick v. Gurley, 93 Tex. 458, 54 S.W. 347, 55 S.W. 119, 56 S.W. 330, on motion for rehearing; Hunt v. Turner (Tex.Civ. App.) 88 S.W.(2d) 520.

The court was not in error in refusing to submit plaintiff's requested special issue No. 3, and the dependent issue No. 3a, nor was it error and for the same reason to refuse to submit special issues 4 and 4a. While plaintiff pleaded that Temple promised to reconvey to her "58 acres to be selected by her," the evidence does not show that he so promised, nor does the evidence show that Temple did not intend to keep such promise at the time he made the same.

A court is required to submit only such questions of fact as are pleaded and have support in the evidence. Plaintiff testified: "I was to have 58 acres in the northeast corner of that land where my house now stands." No map or diagram of the larger 198.8-acre tract is found in the record, but by following the calls for course and distance as in the deed of February 27, 1929, it appears that the tract is not rectangular in shape, and does not square with the compass, and, as stated above, the evidence does not show the location of plaintiff's house on the tract, other than it was in the northeast corner.

In the judgment the trial judge stated the court's findings on certain facts not submitted to the jury. Appellants insist that the facts found by the court are ultimate fact issues and should have been submitted to the jury.

To entitle plaintiff to have issues of fact affirmatively and directly submitted to the jury, it must appear that such facts were raised by both the pleadings and the evidence. Plaintiffs in their brief do not point out the evidence which necessitates or justifies the submission of such issues to the jury.

Plaintiffs pleaded and the evidence shows that Ollie Mae Dorsey conveyed to A. L. Temple her entire legal title to said land by warranty deed, duly recorded; that Temple conveyed an undivided ½ interest in the minerals in said land to the Federal Royalties Company; the Federal Royalties Company conveyed said mineral interest to Burgin and Laird; plaintiffs did not allege that the Federal Royalties Company, at the time of its purchase had notice, actual or constructive, of her claims, or had not paid value. There was no evidence that either of said mineral purchasers had actual notice of plaintiff's claims, and as to constructive notice, the jury found that the Federal Royalties Com-

pany, in making its purchase, knew of and relied upon the record of the deed from plaintiff to A. L. Temple, and procured and relied upon the opinion of a lawyer as to the state of the title. No other issues on this branch of the case were submitted or requested to be submitted by either party.

 Plaintiff, asserting the equitable right to cancel and rescind her deed to Temple, had the burden of pleading and proving that the· purchasers of the legal ▪title to her undivided ½ interest in the minerals in the land, took with notice actual or constructive, of her alleged rights, or bought without paying an adequate consideration. Texas Loan Agency v. Taylor, 88 Tex. 47, 29 S.W. 1057; Baldwin v. Root, 90 Tex. 546, 622, 40 S.W. 3; Barnes v. Jamison, 24 Tex. 362; Teagarden v. Godley Lumber Co., 105 Tex. 616, 154 S. W. 973; Commonwealth Bldg. & Loan Association v. Howard (Tex.Civ.App.) 61 S. W.(2d) 546, affirmed (Tex.Com.App.) 94 S.W.(2d) 144.

Plaintiff remained in possession of the land after conveying to Temple.

 A rule of property has long been established in this state that where a grantor, after executing a deed to land, absolute and unconditional on its face, continues to remain in possession, a purchaser from the grantee may rely upon the terms of the deed as a declaration of the grantor that he has parted with title, and, as a matter of law, is relieved of further inquiry. Eylar v. Eylar et ux., 60 Tex. .315; Love v. Breedlove, 75 Tex. 649, 13 S.W. 222; National Bond & Mortgage Corporation v. Davis (Tex.Com.App.) 60 S.W. (2d) 429, 433, in which Judge Sharp quotes from Ramirez v. Smith, 94 Tex. 184, 59 .S.W. 258, as follows: "There are cases which, while recognizing the proposition that possession is sufficient to excite inquiry, hold that where the possessor has done something, such as making a deed to another, which is of record, which furnishes a sufficient answer to the inquiry arising, the possession does not impose the duty of further investigation," and in which reference is made to Eylar v. Eylar, supra, and many other Texas cases.

 It follows, we think, that since the Federal Royalties Company was ·protected under the pleadings and verdict as above, as an innocent purchaser, those claiming under it, that is Burgin and Laird, were likewise protected. Kinard v. Sims (Tex.

Civ.App.) 53 S.W.(2d) 803; Commonwealth B. & L. Ass'n v. Howard (Tex.Civ. App.) 61 S.W.(2d) 546, affirmed (Tex. Com.App.) 94 S.W.(2d) 144; Huling v. Moore (Tex.Civ.App.) 194 S.W. 188.

In making the findings in the judgment complained of, the judgment recites the findings are made "from a consideration of the pleadings, the undisputed evidence in the case and the verdict of the jury."

We have found no reversible error and the case is affirmed.

Affirmed.