**Mary BAYLOR, Appellant,**

v.

**Guadalupe G. RAMOS, Appellee.**

No. 12965.

Court of Civil Appeals of Texas.

San Antonio.

April 11, 1956.

Rehearing Denied May 16, 1956.

Leo A. Oliver, San Antonio, for appellant.

Evans & Williams, San Antonio, for appellee.

POPE, Justice.

This is an appeal from a summary judgment for the plaintiff, Guadalupe G. Ramos, in her suit for trespass to try title against Mary Baylor, the appellant. Mary Baylor on March 8, 1954, executed a general warranty deed conveying some San Antonio city property to Morris Feingold. The deed was recorded March 10th. Feingold on March 9th conveyed the property to Mrs. Guadalupe Ramos. Mrs. Ramos filed this suit when Mrs. Baylor refused to surrender possession and claimed title to the property. Mrs. Ramos recovered judgment on the grounds that she was an innocent purchaser from Feingold for value, without notice of the claim of title by Mrs. Baylor.

Mrs. Baylor, by her answer and showing on the summary judgment hearing, took the position that Mrs. Ramos knew, or had notice, that Mrs. Baylor retained an implied lien upon the property until a new home was built, and that she executed and delivered the deed on March 8th by reason of fraud and misrepresentations by Feingold. '

The judgment is affirmed, since the showing presented only questions of law which the court properly decided. On March 8, 1954, Mrs. Baylor engaged Feingold to build her a new home on property not here involved. She acknowledges that she signed some kind of documents before a notary in that connection. She denies that she knew she was executing a deed to Feingold on March 8, but pleads that she agreed to exchange the property here involved for a new house which Feingold was to build. She received a deed from Feingold to the new house and lot. She and Feingold got into a controversy about the new house more than six weeks after March 8th. Their controversy was whether she or Feingold should connect the new

house with the utilities and whether she was to receive natural or butane gas.

█ Whatever may have been the contract between Mrs. Baylor and Feingold, when Mrs. Ramos took her deed from Feingold on March 9th, it showed on its face that it was a general warranty deed given for a cash consideration with no liens reserved. Whatever may be Mrs. Baylor's rights against Feingold, the law question which was presented to the trial judge was whether Mrs. Ramos on March 9th knew, or had reason to inquire, about any claim of title by Mrs. Baylor. Knowledge acquired by Mrs. Ramos after that date does not operate to invalidate the deed. Hence, the important consideration is what Mrs. Ramos knew on March 9th, not what Mrs. Baylor and Feingold may have known, and not what happened later.

The showing on the summary judgment consists of the pleadings, affidavits, admissions, the deed, and a deposition in a different case, which upon the hearing had not been signed. Mrs. Baylor, by her affidavit, asserts that Feingold showed the property to Mrs. Ramos during February, which was before the execution of the deeds. Mrs. Baylor stated that she then had the property listed with Feingold for sale but had not yet made an agreement to deed that property to Feingold in exchange for the new home he was going to build for her. Her affidavit does not in any manner purport to show that she put Mrs. Ramos on notice of any defective title prior to March 9, 1954. In fact, she declares: "Prior to March 9, 1954, * * * I told Mrs. Ramos that I was going to make a trade with Mr. Feingold to trade him my house for one he was going to build * * *." That statement would indicate to Mrs. Ramos, when she later accepted the deed from Feingold, that Mrs. Baylor had made the trade she said she was going to make. Mrs. Baylor's affidavit also stated that: "Mrs. Ramos did, however, *after I made a contract* with Mr. Feingold to build a house for me, come back to my home * * * and inform me that she had bought the house from Mor-

ris L. Feingold. I told her *at that time* that I had not sold the property to Mr. Feingold." The date of Mrs. Baylor's contract with Feingold to build the new house is fixed at March 8, 1954. This is shown by her own affidavit, that of her daughter and of Mr. Feingold. Hence, according to Mrs. Baylor, it was after, not before, the Baylor-Feingold contract that she told Mrs. Ramos that she had given no deed to Feingold and would give none until her new home was completed.

Mrs. Baylor's daughter made an affidavit which stated that Mrs. Ramos visited the Baylor home about the middle of February, at which time Mrs. Baylor told Mrs. Ramos that she had an agreement with Feingold to exchange property, that the new house was not yet built, that she would execute no deed until it was built, because she did not know what kind of house Feingold would build. The daughter's affidavit agrees with Mrs. Baylor's in fixing March 8th as the date Mrs. Baylor executed some legal documents. The daughter denies that her mother executed a deed.

Mrs. Baylor can read and write, but the affidavits state that she did not read the deed because her eyesight is not good. She asked her daughter to read the papers. There were six sheets, according to her daughter, and her daughter read three of them. Mrs. Baylor stated that her daughter told her the papers were all right, so she then went to a notary public and signed the papers. The mother disclaims that she knew she was signing a deed, but declares she signed the papers, whatever they were, before the notary. She says that she thought they were contracts to build her new house. Her affidavit is not that she failed to make delivery of the documents, but that she intended to execute a contract instead of a deed. The essence of her complaint is therefore that she was defrauded into signing a deed which she thought was only a building contract, which she did not read. She in fact executed the deed.

After Mrs. Baylor had armed Feingold with her warranty deed and he in turn

conveyed the property, Mrs. Baylor fell into a dispute with Feingold. She told Mrs. Ramos on several occasions that her deed to Feingold was invalid, but those occasions were after Feingold conveyed the property to Mrs. Ramos. The affidavits fail to disclose that Mrs. Ramos, prior to March 9th, when she obtained her deed, had any reason to believe that Feingold had no title, or that he was guilty of any fraud upon Mrs. Baylor, or that he would some time later fall into a dispute with Mrs. Baylor about the completion of a home which was not even started on March 9th.

■ Mrs. Baylor claims, in effect, that Mrs. Ramos, to be a good faith purchaser, should have waited and made investigation to determine whether Mrs. Baylor's new home was completed, and, if so, whether it conformed to a contract between Mrs. Baylor and Feingold. Having determined that the home did not conform to the contract by reason of a dispute over utilities, Mrs. Ramos should then have concluded that Mrs. Baylor's deed was induced by fraud. See Browne v. King, 111 Tex. 330, 235 S.W. 522.

When Mrs. Ramos received her deed from Feingold, she had no notice that there was or would be any dispute between Feingold and his grantor, Mrs. Baylor. Mrs. Ramos had no reason to believe that the deed was fraudulently induced, that there might possibly develop a failure of consideration, nor did she have facts which would cause her to regard the deed as meaning anything different from its own terms. To Mrs. Ramos the deed in all things appeared to be the satisfactory and harmonious consummation of Mrs. Baylor's plans. Pure Oil Co. v. Swindall, Tex. Com.App., 58 S.W.2d 7, 107, states:

"The doctrine of innocent purchaser grows out of the idea that a court of equity will not grant relief against an innocent party where the plaintiff has placed in the hands of another, the apparent power to cause the said party to act to his detriment, and that where one of two innocent parties is to suf-

fer, then the one who has placed in the hands of another the means by which a wrong is done must be the one to suffer. We assume that the execution and delivery of the instrument, dated February 22, 1924, was procured through fraud. So assuming, such an instrument so executed and delivered, in the absence of notice of the circumstances under which its execution and delivery was procured, apparently was fair on its face, and therefore not void, though subject to be declared so by a court of competent jurisdiction under proper pleadings and due proof. In other words, such an instrument so executed, as between the parties, was voidable, and was not void, even between the parties. Furthermore, until such an instrument has been declared to be void, in an authoritative manner, persons who are ignorant of the circumstances under which the instrument was executed and delivered are entitled to consider it genuine."

■ The fact that Mrs. Baylor was in possession of the property one day after she executed her deed did not put Mrs. Ramos on notice of a claim. Dorsey v. Temple, Tex.Civ.App., 103 S.W.2d 987, 995, states the applicable rule:

"A rule of property has long been established in this state that where a grantor, after executing a deed to land, absolute and unconditional on its face, continues to remain in possession, a purchaser from the grantee may rely upon the terms of the deed as a declaration of the grantor that he has parted with title, and, as a matter of law, is relieved of further inquiry."

■ In passing on this appeal we have not considered the contents of a deposition given by Mrs. Baylor, portions of which are contained in the transcript. The deposition at the summary judgment hearing was unsigned. It apparently was not formally presented to the court. It was taken in connection with a different suit. After

the hearing, it was apparently corrected, changed and signed. The deposition is included in the transcript in its condition both before and after it was changed and signed. The deposition was not properly before the trial court and is not properly before this Court.

The judgment is affirmed.